Wilkin, J.
At the threshold, the defendant refers us to the circuit court’s finding that, “there is not sufficient proof to sustain the judgment of ' the court of common pleas' and the defendant says, that judgment, being based upon the weight of the evidence alone, cannot be reviewed by this court. That judgment is not based upon the weight of the evidence, but upon its insufficiency. The evidence is almost entirely documentary; there is no conflicting testimony to be weighed against the documents. We have simply to determine a question of law; that .is to say, what legal relations do the facts in the record establish; and what rights and duties spring out of those relations?
The answer being a general denial, excepting express admissions hereinbefore stated, challenges the capacity of the plaintiff to maintain the suit. This objection was not made in oral argument, but it is raised in the defendant’s brief. The duly authenticated copy of the proceedings in the probate court of Cuyahoga county establishes the fact of the plaintiff’s appointment and qualification “to act as the trustee of a trust estate created for the benefit of Henrietta C. Vance by the last will and *287 testament of Martha Cooper deceased.” But the defendant, catching at the initial averment of the petition, which alleges that “the plaintiff is the duly appointed trustee, vice L. A. Russell, deceased,” makes the point that Russell was never appointed nor qualified as trustee under the will, and that Martha Cooper, during. her life, never held the funds nor the certificates of stock in the loan company as trustee for Henrietta.
The second question thus .raised is, what is the effect of the style in which the certificates were taken out by Martha Cooper, through her attorney? They are issued to “Henrietta Cooper Vance (Martha Cooper or other legal guardian may draw).” This is a declaration of an inchoate, passive trust; incomplete, (1) ' as a donation of the fund, because she retains dominion over it, and, (2) as a limitation or designation of the purpose of the gift, because it does not signify for what purpose or in what manner the donee is to enjoy the fund. It is an executory, passive trust. 2 Pom. Eq. Jur. (2 ed.), Secs. 1000, 1001, 988, 989.
Martha retained dominion over the fund, first by retaining possession of the certificates; and, secondly, by reserving power in herself to draw it out. In what relation or character did she reserve dominion ? As absolute owner ? Manifestly not, for she prescribes that, “other legal guardian may draw,” thus showing an intention to put the fund in ward or trust for the use of her granddaughter Henrietta. The word “legal” is suggestive; it indicates that she regarded herself *288 as a trustee or a gMtm'-guardian, and the word “other” conveys the idea that she had in mind that the trust should pass to another custodian when her control should cease. Her successor might be a statutory guardian or a testamentary trustee, upon certain contingencies, and therefore she covers both characters by the use of the words “legal guardian.”
As the insertion of this parenthetic clause in the title of the certificates, creates an executory trust, we are not restricted to rigid legal rules in the interpretation of the language of the donor. Fortunately we have some extraneous clues to the meaning of her language. Mr. Russell, who was her legal adviser and who transacted this business for her, doubtless dictated these words to be written into the certificates. By conduct and correspondence he interpreted the language for us, in his letter to the company, saying: “Consider Martha Cooper as a guardian,” and the company adopted that construction of her relation to the fund. It does not lie in the defendant’s mouth to assert otherwise now. If any doubt still lurked in the form of these certificates, it is completely dispelled by the will.
This brings us to the third question: what was L. A. Russell’s relation to this fund and these certificates, at and after the death of Henrietta’s grandmother, Martha? He is nominated in the will as executor and trustee of the property, for the use and benefit of the beneficiary of the will, in trust, etc. Referring to her granddaughter Henrietta, she gives to her said executor, for her, *289 (Henrietta) or for her benefit, till she be thirty years of age, “all such moneys as at the time of my death I shall or may hold in trust for said Henrietta, intending to make my said executor * * * my own successor in said trust for Henrietta.”
It is perfectly clear to us on the record, that the plaintiff was regularly appointed and fully qualified and empowered to bring this suit as the successor of L. A. Russell, who succeeded Martha Cooper as trustee of this fund. L. A. Russell was a testamentary trustee and acquired his authority from the will. The fact that he was not named as trustee in his letter of authority issued from the probate court is of no importance, and it affords the defendant no immunity from the demands of the new trustee appointed by the probate court to execute the trust defined by the will.
Fourth. Another point raised by counsel for the defendant is, that Russell was the mere agent of Henrietta. But he acted as a trustee. One month after her grandmother’s death, he sent the company a copy of the will, and wrote that he held the certificates in trust under the will and that the dividends should be paid to him thereafter as trustee. By the subscriptions to the transfers endorsed upon the certificates as well as by his subscriptions to the written pledges lodged with the company for the loans, the company was advised that it was dealing with Henrietta’s trustee. And as if to warn the defendant that- • it was lending him trust funds, 'he repeatedly reminded the company in his letters *290 that he held the certificates in trust under the will and not otherwise.
Counsel for the defendant say in their brief: “The Loan Company finally made up its mind that the money represented by the certificates belonged to Henrietta Vance, and it required Henrietta to ratify all of Russell’s transactions, * * * and Henrietta, the cestui que trust, for whom Moolc is now trustee * * * ratified Russell’s acts.” This refers to the power of attorney.
At the time Henrietta gave that power of attorney, she was twenty-two.years of age, nevertheless she was not quite sui juris. She lived in the family of Russell, a lawyer, prominent in the city of Cleveland, and a great friend of her father, Dr. Reuben A. Vance, deceased. “It was out of this friendship that the dependence of the family on Mr. Russell came,” says a witness, a lawyer of Cleveland, who knew the family for twenty years after the father died. Asked about her ability to transact business, this witness said: “She would need a strong friend. When she was a little girl she was very severely hurt and had an illness, from which she seemed never to fully recover. She was never strong, always puny, weak and. anaemic. She is not quite as well. able as the average woman to manage, her affairs.”
The defendant called Henrietta as a- witness against herself. She had lived with Mr. Russell as a member of his family about eight years, *291 when he took her to his office and' asked her to sign this paper. She merely glanced at- it, and did not know its contents. He told her it' gave him power to take money out of the Akron bank and place it in a Cleveland bank, or elsewhere at will. She did not know then that $11,500 of the certificates were cancelled or pledged to The Akron Savings & Loan Company. She had no advice, no person was present except Mr. Russell, and he did n®t- read it to her. The reason she did not read' it was, she regarded Mr. Russell as a father; she had implicit confidence in him. •
Russell stood to this girl in loco parentis; her relation to him was not only one of trust and confidence but dependence. This power of attorney was an imposition and a fraud upon her.
Fifth. How does it affect the defendant? The defendant knew that the grandmother had placed the funds in custody for the girl till she should arrive at the age of thirty years; that Russell dreaded to explain to her that he had converted and used her funds, and that he deemed it better for him and for the company, if that shift were not attempted. This was enough to put the defendant on inquiry and charge it with knowledge of the girl’s dependent situation, and of the vice of inducing her to approve Russell’s defalcation and to acquit the company of all responsibility. Nay, more, the defendant must have contemplated the compelling' temptation Russell would be under to deceive and beguile his unsuspecting ward.
*292 Aside from this consideration, there is one conclusive answer to the defendant’s plea of ratification. Henrietta herself had no power over the corpus of the fund till she be thirty years of age, which she will- not be till November 22, 1914.
Sixth. The last palliation offered by the defendant deserves a passing notice. It is that the bylaws of the company and a statute of the state “authorize exactly what it did, namely, withdrawals of the stock by borrowing and putting up certificates as. collateral for loans, and in the event the loan was not paid subsequently, to cancel the pledged certificates.” This is a bald petitio principium; it assumes that the borrower owns the stock in his own right and has the right to pledge it for his own debt or exchange it for money for his personal use. There could be no by-law nor statute to empower a trustee to deal thus with securities of an infant cestui que trust, upon his mere volition, and to appropriate the money to himself.
This reference to its powers as a corporation calls attention to its Responsibilities and duties. It received Henriétta’s money in trust and assumed to protect and preserve it. When it lent or exchanged the money to L. A. Russell for his personal use, it violated a trust enjoined upon it by the law of the land, aside from any trust declared in the will. For this reason, as well as because it had full and ample knowledge of the trust-character of the investment, and received the money impressed with the trust limited in the will till the beneficiary be thirty years old; and *293 because it permitted and assisted the faithless trustee to convert the securities and squander the trust-estate, the defendant must repair the loss and restore the money, and account for accumulated dividends and interest.
We cannot adopt the suggestion that three certificates were cancelled outright with the view of reinvestment. The conduct of the defendant in this whole affair is of one piece, and it does not invite our confidence, since there is no convincing evidence of defendant’s diligence and fidelity. The judgment should have been according to the prayer of the amended petition in both courts below.
Judgment of the circuit court reversed, that of the common pleas modified, and judgment will be entered here for the full amount of the plaintiff’s claim as prayed for.

Judgment for plaintiff.

Shauck, C. J., Johnson, Donahue, Wanamaker and Newman, JJ., concur.